| ATTORNEY DISCIPLINARY PROCEEDINGS
 

 PER CURIAM.
 
 *
 

 This disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel (“ODC”) against respondent, Calvin Lester, an attorney licensed to practice law in Louisiana but currently on interim suspension pursuant to a joint motion of the parties filed in December 2007.
 
 In re: Lester;
 
 07-2318 (La.12/5/07), 969 So.2d 609.
 

 UNDERLYING FACTS AND PROCEDURAL HISTORY
 

 In September 2002, the ODC filed the first of four sets of formal charges against respondent in 02-DB-100.
 
 [1]
 
 In April 2006, a second set of charges was filed in 06-DB-019. Respondent answered both sets of formal charges, denying the alleged misconduct. The two matters were consolidated by order of the hearing committee chair before proceeding to a formal hearing on the merits conducted by the hearing committee in September 2006.
 

 The third set of formal charges, 06-DB-035, was filed in July 2006. Respondent answered the formal charges, denying the alleged misconduct. The matter then proceeded to a formal hearing on the merits conducted by the hearing committee in April 2007.
 

 |2The fourth set of formal charges, 07-DB-055, was filed in October 2007. Respondent failed to answer the formal charges. Accordingly, the factual allegations contained therein were deemed admitted and proven by clear and convincing evidence pursuant to Supreme Court Rule XIX, § 11(E)(3). No formal hearing was held, but the parties were given an opportunity to file with the hearing committee written arguments and documentary evidence on the issue of sanctions. Respondent filed nothing for the hearing committee’s consideration.
 

 Thereafter, the four sets of formal charges were consolidated by order of the disciplinary board. The board subsequently filed in this court a single recommendation of discipline encompassing all four sets of formal charges.
 

 02-DB-100
 

 Counts I & II
 

 As a partner in the law firm of Lester & Lester, respondent handled personal injury matters for Patricia Cooper, Pattie Cooper, and Dexter Crutchfield, all of whom had been treated by Chiro-Plus. In late 1998 and early 1999, respondent settled his clients’ cases and withheld sums from the settlements to pay medical expenses, as follows: Patricia Cooper ($1,200); Pattie Cooper ($1,200); Mr. Crutchfield ($944). However, respondent failed to promptly remit these funds to Chiro-Plus. While the funds, a total of $3,344, should have been in respondent’s trust account, the balance of the account fell below zero.
 

 In September 1999, respondent sent Chiro-Plus a $400 check as partial payment of the three client accounts. However, a representative of Chiro-Plus denied receiving the check. In January 2000, respondent sent Chiro-Plus a $3,000 check, which was dishonored by his bank due to
 
 *336
 
 insufficient funds in the account. In June | c.2000, respondent sent Chiro-Plus another $3,000 check, which Chiro-Plus accepted as settlement in full of all three client accounts.
 

 The ODC alleged that respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.15(a) (safekeeping property of clients or third persons) and 1.15(b) (failure to timely remit funds to a client or third person).
 

 06-DB-019
 

 Count I
 

 In 2001, Bernadine Gibbs hired respondent, who at that tune worked at the English & Lester law firm, to garnish her ex-husband’s wages in order to collect past-due child support. Beginning in August 2001, the garnishment payments were sent directly to respondent twice a month. Initially, respondent forwarded these funds to Ms. Gibbs. However, beginning in March 2002, after respondent left English
 
 &
 
 Lester, he failed to forward the funds to Ms. Gibbs on a consistent basis and would not return her telephone calls. In June 2002, after Ms. Gibbs’ numerous attempts to contact respondent, he sent her a partial payment of $1,000, but thereafter he failed to forward her any future garnishment payments. While these funds should have been in respondent’s trust account, the balance of the account consistently fell below the amount of garnishment funds in his possession.
 

 Ms. Gibbs was eventually forced to obtain the services of a new attorney to have the garnishment payments routed directly to her, and she filed suit against respondent in Shreveport City Court to collect the funds owed to her. In March 2003, Ms. Gibbs obtained a default judgment against respondent. Ms. Gibbs received |4$2,000 from respondent in June 2003; however, an accounting revealed that respondent still owes Ms. Gibbs $1,500.
 
 [2]
 

 In June 2002, Ms. Gibbs filed a disciplinary complaint against respondent. Respondent failed to respond to the complaint, necessitating the issuance of a subpoena to obtain his sworn statement. Despite being personally served with the subpoena, respondent failed to appear.
 

 The ODC alleged that respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.3 (failure to act with reasonable diligence and promptness in representing a client), 1.4 (failure to communicate with a client), 1.15(a), 1.15(b), 1.15(c) (when a lawyer is in possession of property in which both the lawyer and another person claim interests, the property shall be kept separate by the lawyer until there is an accounting and severance of then- interests), and 8.1(c) (failure to cooperate with the ODC in its investigation).
 
 [3]
 

 Count II
 

 In 2001, Mary Wilson (King) hired respondent’s law firm, English & Lester, to handle her criminal matter. After she was convicted, respondent agreed to handle the appeal for $1,500. It is undisputed that Ms. Wilson paid $1,000 of the $1,500 fee.
 
 *337
 
 However, Ms. Wilson claimed that she paid the entire $1,500 before respondent filed the appeal, while respondent maintained that she only paid $1,000. Nonetheless, | ¡-.respondent filed Ms. Wilson’s appeal, and the court of appeal reversed her conviction in June 2002.
 

 Respondent also agreed to handle, on a contingency basis, Ms. Wilson’s claim for damages for wrongful arrest and filed a lawsuit on her behalf. In July 2002, she paid respondent an additional $150 and received a receipt indicating a balance due of $350. Thereafter, respondent left English & Lester and began campaigning for a seat on the Shreveport City Council. He retained Ms. Wilson’s file to pursue her civil case. Eventually, though, respondent transferred the civil case to his former law partner, Larry English, at Ms. Wilson’s request.
 

 In September 2002, Ms. Wilson filed a disciplinary complaint against respondent. Respondent failed to respond to the complaint, necessitating the issuance of a subpoena to obtain his sworn statement. Despite being personally served with the subpoena, respondent failed to appear. Respondent finally submitted a written response to the complaint in March 2004.
 

 The ODC alleged that respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.3, 1.4, 1.16(d) (obligations upon termination of the representation), and 8.1(c).
 

 Count III
 

 Respondent represented Fellan Whitaker in a suit pending in the United States District Court for the Western District of Louisiana. In August 2002, while he was seeking a seat on the Shreveport City Council, respondent failed to participate in a telephone pre-hearing conference with the magistrate judge. Respondent was ordered to show cause on September 3, 2002 why he should not be held in contempt for failing to cooperate with the court. Respondent failed to appear for the show cause |nhearing, and the magistrate judge recommended that he be disbarred from practicing before the court.
 

 Thereafter, the defendants filed a motion for summary judgment. Respondent claimed that he notified Mr. Whitaker to seek other counsel, as he intended to withdraw from the representation. However, respondent did not file a motion to withdraw. When another attorney called him about the case, respondent believed the attorney was going to enroll as Mr. Whitaker’s counsel of record. As such, he did not file an opposition to the motion for summary judgment. On May 5, 2003, the district judge granted summary judgment in favor of the defendants. At that time, the district judge also disbarred respondent from the practice of law in the Western District. Respondent filed a motion to set aside the judgment of disbarment but failed to attend the related hearing. As such, the disbarment order was maintained.
 

 In August 2003, the federal court sent the ODC notice of respondent’s disbarment. Respondent did not respond to the ODC’s request for an explanation about his federal court disbarment until April 2004.
 

 The ODC alleged that respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.3, 1.4, 1.16(d), 3.4(c) (knowing disobedience of an obligation under the rules of the tribunal), 8.1(c), and 8.4(d) (engaging in conduct prejudicial to the administration of justice).
 

 Count IV
 

 Cedric Williams hired respondent to defend him in a criminal matter and to handle his civil claim of excessive force by the police. Respondent handled the criminal matter, but Mr. Williams alleged that re
 
 *338
 
 spondent would not respond to his requests for information about his civil claim.
 

 |7In July 2003, Mr. Williams filed a disciplinary complaint against respondent. Respondent failed to respond to the complaint until April 2004.
 

 The ODC alleged that respondent’s conduct violated Rule 8.1(c) of the Rules of Professional Conduct.
 

 Heaving Committee Report
 

 After considering the testimony and evidence presented at the hearing, the hearing committee made the following findings:
 

 The Cooper and Crutchfield
 
 matters■— Respondent was a partner in the Lester & Lester law firm and was jointly responsible for managing the trust account to ensure funds were appropriately disbursed. He signed blank trust account checks and turned them over to a bookkeeper without any meaningful practices and procedures to ensure funds were properly disbursed. He also failed to advise Chiro-Plus when its patients’ personal injury cases settled. Respondent withheld $944 from Mr. Crutchfield’s settlement in September 1998 to pay Chiro-Plus. Respondent withheld $1,200 from each of the Coopers’ settlements in early 1999 to pay Chiro-Plus. Nonetheless, the funds were not paid to Chiro-Plus. When Chiro-Plus contacted him, respondent failed to promptly correct the problem. He made an initial $400 payment in September 1999. In January 2000, he sent Chiro-Plus a $3,000 check, which was returned for insufficient funds. In June 2000, respondent sent Chiro-Plus another $3,000 check, which completely paid Chiro-Plus the funds withheld from the three settlements. However, while respondent was holding Chiro-Plus’ funds in his trust account, the account’s balance fell below zero, resulting in multiple instances of conversion of third-party funds. He also deprived Chiro-Plus of its funds for an | ^extended period of time. Respondent violated Rules 1.15(a) and 1.15(b) of the Rules of Professional Conduct in these matters.
 

 The Gibbs matter
 
 — Respondent received child support checks on Ms. Gibbs’ behalf and deposited them into his trust account. He then converted some of the funds to his own use. Despite Ms. Gibbs’ repeated demands, respondent failed to forward the checks to her. On at least one occasion, the balance of his trust account fell below the amount deposited on Ms. Gibbs’ behalf. Respondent deposited four of the checks in a non-trust account. Ms. Gibbs obtained a default judgment against respondent in the amount of $3,000, which represented the child support payments due her and converted by respondent. At the formal hearing of this matter, respondent admitted that he still owes Ms. Gibbs $1,500. Respondent failed to respond to Ms. Gibbs’ disciplinary complaint or appear to give the ODC a sworn statement, despite being served with a subpoena. Respondent’s conduct was knowing. Respondent violated Rules 1.3, 1.4, 1.15(a), 1.15(b), 1.15(c), and 8.1(c) of the Rules of Professional Conduct in this matter.
 

 The Wilson matter
 
 — Respondent was not inclined to pursue Ms. Wilson’s civil case because she still owed him money for the appeal. When she became belligerent and demanded her file, respondent provided her with her file. She then retained Mr. English. As such, she was properly represented in the civil case. The ODC failed to prove this count by clear and convincing evidence.
 

 The Whitaker matter
 
 — Respondent failed to participate in a status conference with the court and opposing counsel. He also failed to attend the resulting rule to show cause, despite receiving notice. He failed to file a response to the motion for summary judgment. As such, he was dis
 
 *339
 
 barred in the Western District. He filed a motion to set aside the disbarment but failed to attend the related hearing due to a 19scheduling conflict. As a result, his disbarment became final. He explained that he thought his client had retained new counsel, but he failed to file a motion to withdraw. He also failed to timely respond to the ODC’s notice of the disciplinary complaint. Respondent violated Rules 1.3, 1.4, 1.16(d), 3.4(c), 8.1(c), and 8.4(d) of the Rules of Professional Conduct.
 

 The Williams matter
 
 — Respondent told Mr. Williams that he would not pursue his civil case. He requested that Mr. Williams retrieve his file, but Mr. Williams never picked it up. He also attempted to get in touch with Mr. Williams by telephone and correspondence, but he never heard back from Mr. Williams. The ODC failed to prove this count by clear and convincing evidence.
 

 Based on these findings, the committee determined that respondent violated duties owed to his clients, the public, the legal system, and the legal profession. His actions in dealing with Chiro-Plus were grossly negligent and knowing with respect to Ms. Gibbs and his federal court disbarment. He harmed Chiro-Plus and Ms. Gibbs by withholding their funds for months. In fact, he did not make full restitution to Ms. Gibbs until after the formal hearing. Relying on the ABA’s
 
 Standards for Imposing Lawyer Sanctions,
 
 the committee determined that the baseline sanction is suspension.
 

 In aggravation, the committee found a pattern of misconduct, vulnerability of the victims, and indifference to making restitution. As additional aggravating factors, the committee noted respondent’s “failure to respond to his client’s and the federal court’s requests” and “failure to respond [to] and cooperate with the ODC.” The committee further found that “respondent cannot be trusted in a fiduciary capacity.” In mitigation, the committee found inexperience in the practice of law (admitted 1997), character or reputation, and imposition of other penalties or sanctions.
 

 |10In light of the above findings and this court’s prior jurisprudence, the committee recommended that respondent be suspended from the practice of law for three years.
 

 Respondent filed an objection to the hearing committee’s recommendation, requesting leniency in the sanction to be imposed.
 

 06-DB-035
 

 Count I
 

 In June 2003, Sandra Jordan consulted with respondent about her employment discrimination claim, paying him a $50 consultation fee. In October 2003, Ms. Jordan hired respondent to handle the claim, paying him $350. On October 7, 2003, respondent wrote a letter to the United States Equal Employment Opportunity Commission (“EEOC”) on Ms. Jordan’s behalf. In February 2004, respondent prepared an EEOC “Charge of Discrimination” complaint form, which Ms. Jordan signed on February 24, 2004. In April 2004, Ms. Jordan received notice from the EEOC that it had dismissed her claim because it was “unable to conclude that the information obtained establishes violations of the statutes.” However, the notice gave her until July 26, 2004 to file a lawsuit based on the Age Discrimination in Employment Act.
 

 Between June 2, 2004 and March 3, 2005, respondent was declared ineligible to practice law due to his failure to comply with the mandatory continuing legal education requirements. On July 25, 2004, while ineligible to practice law, respondent informed Ms. Jordan that her claim would soon prescribe and that she should “bring in what money [she] had.” Ms. Jordan
 
 *340
 
 then paid respondent an additional $400. On July 26, 2004, a lawsuit was filed on Ms. Jordan’s behalf in the | n United States District Court for the Western District of Louisiana. The lawsuit was filed under the name of attorney Marcus Patillo, who shared office space with respondent. It is undisputed that respondent signed Mr. Pa-tillo’s name to the lawsuit. However, the $150 filing fee was never paid, despite the fact that Mr. Patillo received notice of the deficiency. As such, the lawsuit was stricken from the court’s record on August 25, 2004. Later, Ms. Jordan inquired about a docket number for her lawsuit, but respondent never provided her with the information. Therefore, believing respondent had not filed her lawsuit, she requested a refund of her $400 fee. Respondent did not provide Ms. Jordan with a refund.
 

 In March 2005, Ms. Jordan filed a disciplinary complaint against respondent. Respondent failed to respond to the complaint.
 

 In October 2005, Ms. Jordan sued respondent in Shreveport City Court. Respondent answered the lawsuit and included a copy of the federal lawsuit filed on Ms. Jordan’s behalf under Mr. Patillo’s name. On November 22, 2005, the trial judge dismissed Ms. Jordan’s lawsuit against respondent.
 

 The ODC alleged that respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.3, 1.4, 1.5 (failure to account for or refund an unearned fee), 5.5(a) (engaging in the unauthorized practice of law), and 8.1(c).
 
 [4]
 

 Count II
 

 On May 5, 2003, the United States District Court for the Western District of Louisiana disbarred respondent for two years. He was eligible to apply for | preadmission after May 1, 2005. On July 28, 2005, without having applied for readmission, respondent appeared in the Western District and enrolled as counsel for Chevell Hamilton in a criminal matter. Respondent then handled Mr. Hamilton’s arraignment and questioned the federal government’s witnesses during a detention hearing. On August 12, 2005, upon learning of respondent’s disbarment, the magistrate judge vacated and set aside respondent’s enrollment as Mr. Hamilton’s counsel.
 

 On August 26, 2005, the above events were reported in the Shreveport newspaper. In response to the article, a concerned citizen filed a disciplinary complaint against respondent. The ODC forwarded respondent notice of the complaint in December 2005. However, respondent failed to respond to the complaint.
 

 The ODC alleged that respondent’s conduct violated Rule 5.5(a) of the Rules of Professional Conduct.
 

 Hearing Committee Report
 

 After considering the evidence and testimony presented at the hearing, the hearing committee made the following factual findings:
 

 Respondent was ineligible to practice law in Louisiana from June 2, 2004 until March 3, 2005. He was disbarred from practicing law in the United States District Court for the Western District of Louisi
 
 *341
 
 ana by order dated May 5, 2003. He was eligible to apply for readmission to practice before the Western District after May 1, 2005. However, respondent mistakenly assumed his readmission to the Western District would be automatic after two years.
 

 |,Jn Count I, the committee found that between October 2003 and February 2004, respondent corresponded with Ms. Jordan’s employer and assisted Ms. Jordan in filing out the EEOC “Charge of Discrimination” complaint form. On April 26, 2004, the EEOC sent Ms. Jordan a rejection notice but indicated that she had ninety days to file a lawsuit to preserve her claim.
 

 Between April 26, 2004 and July 25, 2004, there was some communication between Ms. Jordan and respondent about the lawsuit. This communication took place while respondent was disbarred from the Western District. It is unclear how much communication took place after respondent became ineligible to practice law in Louisiana. Although respondent told Ms. Jordan he could not practice in the Western District and another attorney in his office would file her lawsuit in federal court, Ms. Jordan believed respondent was her attorney and was responsible for handling her case. He did not inform Ms. Jordan in writing of his disbarment in the Western District and never told her of his ineligibility to practice law in Louisiana.
 

 Respondent and Mr. Patillo shared office space, expenses, and staff but were not law partners. They maintained separate filing cabinets for their respective clients. In July 2004, respondent asked Mr. Patillo to assist in filing Ms. Jordan’s lawsuit in federal court. Mr. Patillo allowed respondent to set the fee for handling the lawsuit. Respondent decided to charge Ms. Jordan $2,500 and relayed that figure to her. Ms. Jordan “waited until the last minute to decide to file the lawsuit and advance funds for the related legal services. Respondent told Ms. Jordan to bring what money she could so he could at least get the lawsuit filed on time. Respondent met with Ms. Jordan on July 25, 2004, and she brought $400 in cash. The $2,500 fee was not a flat fee. Respondent drafted the federal lawsuit and spoke ⅛° Mr. Patillo about its contents. Mr. Patillo did not have any “substantial substantive input” into the lawsuit Jj/espondent drafted. Mr. Patillo authorized respondent to sign his name to the lawsuit, which respondent did. Respondent did not turn over Ms. Jordan’s file to Mr. Patillo, who never saw the file or the lawsuit. The $400 Ms. Jordan paid is commensurate with the amount of work respondent performed. Mr. Patillo told respondent to apply the $400 to his portion of the office telephone bill, which respondent did without depositing the $400 in a trust account first. On July 26, 2004, respondent had someone from his office file the lawsuit in federal court. However, the filing fee was not paid at that time. Respondent never discussed the filing fee with Ms. Jordan.
 

 After July 25, 2004, respondent lost contact with Ms. Jordan. Mr. Patillo received notice from the federal court that the filing fee needed to be paid. Respondent attempted to reach Ms. Jordan by telephone, but she did not return his calls. However, he never wrote to Ms. Jordan to explain the situation. Neither respondent nor Mr. Patillo did anything to fix the problem with the filing fee, and the lawsuit was dismissed on August 25, 2004. Neither respondent nor Mr. Patillo communicated this to Ms. Jordan. Later, when Ms. Jordan began inquiring about when her case would go to court, respondent never responded. Therefore, she assumed the lawsuit never got filed. She left messages that
 
 *342
 
 she wanted a refund, but respondent did not return her calls.
 

 Ms. Jordan sued respondent in Shreveport City Court, alleging that he failed to file her lawsuit after being paid $400. Respondent answered, stating that Ms. Jordan’s lawsuit was filed and she owed him $2,100. He attached a copy of the federal lawsuit and the receipt showing Ms. Jordan owed a balance of $2,100. Ms. Jordan’s lawsuit against respondent was dismissed.
 

 In Count II, the committee found that on July 28, 2005, respondent appeared in the United States District Court for the Western District of Louisiana and enrolled 11sas counsel for Mr. Hamilton. Respondent enrolled as “shadow counsel” for attorney Shonda Stone, who had never handled a federal criminal case. Both respondent and Ms. Stone appeared in court at the detention hearing. Ms. Stone was to handle the cross-examination of the government witnesses, but she panicked and was unable to do so out of nervousness. In order to help Ms. Stone and Mr. Hamilton, respondent conducted the cross-examination. Subsequently, the court learned that respondent was disbarred in the Western District and rescinded its earlier order enrolling respondent as Mr. Hamilton’s counsel. Respondent was honest and remorseful about cross-examining witnesses while disbarred in the Western District. When he realized he needed to apply for readmission to practice in the Western District, he did so. However, his application was denied.
 

 Based on these facts, the committee determined that respondent did not violate Rule 8.1(c) of the Rules of Professional Conduct in either count because the ODC did not question respondent about his lack of cooperation at the formal hearing. In Count I, when Ms. Jordan disputed the $400 fee, respondent did not provide her with an accounting, did not place the disputed funds in a trust account, and did not suggest a means of resolving the dispute. Respondent technically violated Rule 1.5 even though the committee did not find the $400 unreasonable for the amount of work performed. Furthermore, the committee found that it is clear respondent was acting as an attorney and performing legal sendees, albeit under Mr. Patillo’s license, while he was ineligible to practice law; however, the committee did not specifically state that respondent violated Rule 5.5(a). The committee failed to address the Rule I.3 and Rule 1.4 allegations. In Count II, the committee determined that respondent violated Rule 5.5(a).
 

 11fiWith respect to sanctions, in Count I, the committee determined that respondent’s misconduct stems from poor office management and procedures, rather than from malice or ill intent. Nonetheless, respondent’s conduct harmed Ms. Jordan. Accordingly, the committee recommended that respondent be suspended from the practice of law for two years, with all but six months deferred, and be required to complete a “substantial amount” of additional continuing legal education in law office management procedures. In Count II, the committee found no malice or ill intent on respondent’s part and no harm. Accordingly, the committee recommended that respondent be publicly reprimanded.
 
 [5]
 

 Respondent filed an objection to the hearing committee’s recommendation, requesting leniency in the sanction to be imposed.
 

 
 *343
 

 07-DB-055
 

 Count I
 

 In July 2005, Michael Sawyer hired respondent to handle a community property partition matter. Mr. Sawyer paid respondent a $500 fixed fee. Nonetheless, respondent did not enroll as Mr. Sawyer’s attorney and did not file any pleadings on Mr. Sawyer’s behalf. He took no significant action on Mr. Sawyer’s legal matter. On October 19, 2006, respondent withdrew from the representation.
 

 On October 31, 2006, Mr. Sawyer filed a disciplinary complaint against respondent. Respondent failed to file a written response to the complaint.
 

 The ODC alleged that respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.5(f)(5) (failure to refund an unearned fee) and 8.1(c).
 

 _JjjCount II
 

 In February 2005, Erma Sudds hired respondent to handle a personal injury matter. Respondent had Ms. Sudds sign a contingency fee agreement that included the following clause:
 

 10. It is further agreed that, in the event the attorney negotiates and recommends acceptance of what the attorney, in his sole discretion, considers to be a fair and equitable settlement of the claim for which the attorney is hereby employed, and if the client refuses to accept said settlement, the attorney shall thereupon have the right to withdraw from representation of said client, and the client shall be indebted to said attorney for the amount of the attorney’s fee and costs and expenses herein-above provided based upon the of [sic] settlement recommended by the attorney.
 

 In January 2007, Ms. Sudds filed a disciplinary complaint against respondent. Respondent did not timely respond to the complaint, necessitating the issuance of a subpoena to obtain his sworn statement. During his March 7, 2007 sworn statement, respondent agreed to submit a written response to the complaint within twenty days. He did not submit the written response until October 8, 2007.
 

 The ODC alleged that respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.8,
 
 [6]
 
 1.5 (charging an unreasonable fee), and 8.1(c).
 

 11
 
 ^Hearing Committee Report
 

 As previously indicated, respondent failed to answer the formal charges, which were consequently deemed admitted. After considering the ODC’s deemed admitted submission, the hearing committee determined that the factual allegations in the formal charges are proven by clear and convincing evidence and the alleged rule violations are deemed admitted.
 

 The committee reviewed the ABA’s
 
 Standards for Imposing Lawyer Sanctions
 
 to determine that the baseline sanction is suspension. In aggravation, the committee found multiple offenses, bad faith obstruction of the disciplinary pro
 
 *344
 
 ceeding by intentionally failing to comply with the rules or orders of the disciplinary agency, substantial experience in the practice of law (admitted 1997), and indifference to making restitution. In mitigation, the committee found only the absence of a dishonest or selfish motive.
 

 After also considering this court’s prior jurisprudence, the committee recommended that respondent be suspended from the practice of law for one year and one day.
 

 Neither respondent nor the ODC filed an objection to the hearing committee’s recommendation.
 

 Disciplinary Board Recommendation
 

 02-DB-100 & 06-DB-019 & 06-DB-035 & 07-DB-055
 

 After reviewing these consolidated matters, the disciplinary board determined that the hearing committees’ factual findings are not manifestly erroneous and adopted same. Additionally, the board found that, in the Wilson matter, respondent initially failed to respond to Ms. Wilson’s disciplinary complaint and failed to appear | ^to give the ODC a sworn statement, despite being subpoenaed. The board also found that, in the Jordan matter, respondent admittedly failed to cooperate with the ODC in its investigation.
 

 Based on these facts, the board made the following determinations regarding respondent’s violations of the Rules of Professional Conduct: in the Cooper matter, respondent violated Rules 1.15(a) and 1.15(b); in the Crutchfield matter, respondent violated Rules 1.15(a) and 1.15(b); in the Gibbs matter, respondent violated Rules 1.3, 1.4, 1.15(a), and 8.1(c), but not Rules 1.15(b) and 1.15(c);
 
 [7]
 
 in the Wilson matter, respondent violated Rule 8.1(c) but not Rules 1.3, 1.4, and 1.16(d); in the Whitaker matter, respondent violated Rules 1.3, 1.4, 1.16(d), 3.4(c), 8.1(c), and 8.4(d); in the Williams matter, respondent violated Rule 8.1(c); in the Jordan matter, respondent violated Rules 1.3, 1.4, 1.5, 5.5(a), and 8.1(c); in the unauthorized practice of law matter, respondent violated Rule 5.5(a); in the Sawyer matter, respondent violated Rules 1.5(f)(5) and 8.1(c); and in the Sudds matter, respondent violated Rules 1.3,1.5, and 8.1(c).
 

 The board determined that respondent violated duties owed to his clients, the legal system, and the legal profession. His conduct was intentional in some instances and knowing and negligent in other instances. He caused actual and substantial harm. Based on the ABA’s
 
 Standards for Imposing Lawyer Sanctions,
 
 the board determined that the baseline sanction ranges from suspension to disbarment.
 

 The board found the following aggravating factors: a dishonest or selfish motive, a pattern of misconduct, multiple offenses, bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with the rules or orders of the disciplinary agency, substantial experience in the practice of law, and indifference |i>nto making restitution (in the Sawyer matter). In mitigation, the board found imposition of other penalties or sanctions and remorse.
 

 Turning to the issue of an appropriate sanction, the board determined that case law indicates disbarment is appropriate. Accordingly, the board recommended that respondent be disbarred. The board also recommended that respondent be ordered to provide an accounting and make restitution to Mr. Sawyer.
 

 
 *345
 
 Respondent filed an objection to the disciplinary board’s report and recommendation. Accordingly, the case was docketed for oral argument pursuant to Supreme Court Rule XIX, § 11(G)(1)(b).
 

 DISCUSSION
 

 Bar disciplinary matters fall within the original jurisdiction of this court. La. Const, art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence.
 
 In re: Banks,
 
 09-1212 (La.10/2/09), 18 So.3d 57. While we are not bound in any way by the findings and recommendations of the hearing committee and disciplinary board, we have held the manifest error standard is applicable to the committee’s factual findings.
 
 See In re: Caulfield,
 
 96-1401 (La.11/25/96), 683 So.2d 714;
 
 In re: Pardue,
 
 93-2865 (La.3/11/94), 633 So.2d 150.
 

 The record of this consolidated matter reveals the following misconduct by respondent:
 

 In the Cooper and Crutchfield matters, respondent violated Rules 1.15(a) and 1.15(b) of the Rules of Professional Conduct by failing to timely remit funds due to Chiro-Plus and allowing his trust account balance to fall below zero while he was 12i holding the funds. In the Gibbs matter, respondent violated Rules 1.3, 1.4, 1.15(a), 1.15(b), 1.15(c), and 8.1(c) by failing to timely remit funds clue to Ms. Gibbs, allowing his trust account balance to fall below the amount of garnishment funds in his possession, failing to communicate with her, and failing to cooperate with the ODC in its investigation. In the Wilson matter, respondent violated Rule 8.1(c) by failing to cooperate with the ODC in its investigation. However, the record does not contain clear and convincing evidence that respondent violated Rules 1.3, 1.4, and 1.16(d). In the Whitaker matter, respondent violated Rules 1.3, 1.16(d), 3.4(c), 8.1(c), and 8.4(d) by disobeying the federal court’s orders, failing to file a response to the defendant’s motion for summary judgment, failing to file a motion to withdraw, and failing to cooperate with the ODC in its investigation. However, the record does not contain clear and convincing evidence that respondent violated Rule 1.4. In the Williams matter, respondent violated Rule 8.1(c) by failing to cooperate with the ODC in its investigation. In the Jordan matter, respondent violated Rules 1.3, 1.4, 1.5, 5.5(a), and 8.1(c) by acting as Ms. Jordan’s attorney while he was ineligible to practice law in Louisiana, contributing to the dismissal of her federal lawsuit, failing to respond to Ms. Jordan’s requests for information about her lawsuit’s docket number and a refund, and failing to cooperate with the ODC in its investigation. In the Hamilton matter, respondent violated Rule 5.5(a) by representing a client in federal court while disbarred in said court. Although not specifically alleged, the record supports a finding that respondent also violated Rule 8.1(c) as he admitted he did not respond to the disciplinary complaint. In the Sawyer matter, respondent violated Rules 1.5(f)(5) and 8.1(c) by failing to refund the unearned fee to Mr. Sawyer and failing to cooperate with the ODC in its investigation. In the Sudds matter, respondent violated Rules 1.5 and 8.1(c) by including a clause in his 122contingency fee agreement that allowed him to collect an unreasonable fee and failing to cooperate with the ODC in its investigation. However, the record does not contain clear and convincing evidence that respondent violated Rule 1.3 as related facts were not alleged in the formal charges, and thus were not deemed admitted, and the record re
 
 *346
 
 veals a conflict between respondent and Ms. Sudds over this issue.
 
 [8]
 

 Having found evidence of professional misconduct, we now turn to a determination of the appropriate sanction for respondent’s actions. In determining a sanction, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct.
 
 Louisiana State Bar Ass’n v. Reis,
 
 513 So.2d 1173 (La.1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved considered in light of any aggravating and mitigating circumstances.
 
 Louisiana State Bar Ass’n v. Whittington,
 
 459 So.2d 520 (La.1984).
 

 While respondent’s early misconduct appears to have been caused by negligence, over time respondent began acting more knowingly and in some instances intentionally. He violated duties owed to his clients, the public, the legal system, and the legal profession, causing actual harm. The ABA’s
 
 Standards for Imposing Lawyer Sanctions
 
 indicate that the baseline sanction for most of respondent’s conduct |¾3⅛ suspension. However, we find that Standard 4.41, which calls for a baseline sanction of disbarment, also applies with respect to the Gibbs matter.
 
 [9]
 

 The record supports the following factors in aggravation: a dishonest or selfish motive, a pattern of misconduct, multiple offenses, and bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with the rules or orders of the disciplinary agency. Mitigating factors consist of a delay in the disciplinary proceedings, imposition of other penalties or sanctions, and remorse.
 

 Respondent’s most egregious conduct involves his unauthorized practice of law and his failure to timely remit funds to Ms. Gibbs and Chiro-Plus, which funds he converted to his own use by allowing his trust account balance to fall below the amount he was holding for them.
 

 Respondent argues that his misconduct is due to poor law office management skills and, therefore, urges the court to impose a lenient sanction. However, with respect to his failure to timely remit funds to Ms. Gibbs, his conduct in failing to make full restitution after Ms. Gibbs obtained a judgment against him was intentional. Under this court’s holding in
 
 Louisiana State Bar Ass’n v. Hinrichs,
 
 486 So.2d 116 (La.1986), respondent’s misconduct would warrant disbarment, as he “[failed] to make full restitution or [did] so tardily after extended pressure of disciplinary or legal proceedings.” Disbarment is further supported by
 
 In re: Smith,
 
 09-1141 (La.9/25/09), 17 So.3d 927, wherein we disbarred an attorney who practiced law while ineligible, failed to pay funds due to
 
 *347
 
 third-party medical providers, neglected legal matters, failed to communicate with clients, failed to fulfill his obligations upon | germinating the representation of his clients, failed to refund unearned fees, and failed to cooperate with the ODC.
 

 Under all these circumstances, we will adopt the disciplinary board’s recommendation and disbar respondent. We will further order that respondent make full restitution to Ms. Gibbs and Mr. Sawyer.
 

 DECREE
 

 Upon review of the findings and recommendations of the hearing committees and disciplinary board, and considering the record, briefs, and oral argument, it is ordered that Calvin Lester, Louisiana Bar Roll number 25141, be and he hereby is disbarred, retroactive to December 5, 2007, the date of his interim suspension. His name shall be stricken from the roll of attorneys and his license to practice law in the State of Louisiana shall be revoked. It is further ordered that respondent make full restitution to Bernadine Gibbs and Michael Sawyer. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.
 

 *
 

 Kimball, C.J., did not participate in the deliberation of this opinion.
 

 [1]
 

 . During the formal hearing, the ODC withdrew Count III of 02-DB-100. Accordingly, this opinion does not address that alleged misconduct.
 

 [2]
 

 . At oral argument, respondent's counsel represented that Ms. Gibbs was paid in full following the formal charge hearing, which took place in September 2006. However, there is no documentation of the payment in the record of this matter.
 

 [3]
 

 . With respect to the Rule 1.15 violations, the formal charges actually allege violations of Rules 1.5(a)(b)(c) (dealing with fee arrangements) with a parenthetical reference to "commingling and conversion of client funds.” However, in the ODC’s pre-hearing memorandum, it argues that respondent violated Rule 1.15. Accordingly, the Rule 1.5 allegations appear to be a typographical error and should read Rules 1.15(a)(b)(c).
 

 [4]
 

 . With respect to the Rule 1.5 violation, the formal charges actually allege a violation of Rule 1.15 (dealing with safekeeping property of clients or third persons) with a parenthetical reference to "failure to account/return property belonging to client.” However, in the ODC's post-hearing memorandum, it argues that respondent violated Rule 1.5. Accordingly, the Rule 1.15 allegation appears to be a typographical error and should read Rule 1.5.
 

 [5]
 

 . It is unclear why the committee recommended separate sanctions for each count of die formal charges.
 

 [6]
 

 . Despite the charge that respondent violated Rule i.3, the deemed admitted facts do not include any allegation that respondent neglected Ms. Sudds’ legal matter. Indeed, the record reveals a dispute between Ms. Sudds and respondent over this issue. In her complaint, Ms. Sudds alleged that respondent failed to communicate with her and neglected her legal matter, causing her claim to prescribe. In response to the complaint, respondent stated he informed Ms. Sudds that she would need to produce evidence of her damages in order to move the matter forward, but she never did so. He also denied that he failed to communicate with her. Instead, he stated that they lost contact, and then her claim prescribed.
 

 [7]
 

 . With respect lo Rule 1.15(b) and 1.15(c), the board mistakenly referred to a version of the rules that took effect after respondent's alleged misconduct.
 

 [8]
 

 .
 
 See In re: Doman,
 
 01-3058 (La.1/10/03), 838 So.2d 715, wherein this court held:
 

 If the legal conclusion the ODC seeks to prove (i.e., a violation of a specific rule) is not readily apparent from the deemed admitted facts, additional evidence may need to be submitted in order to prove the legal conclusions that flow from the admitted factual allegations. In other words, mere allegations of a rule violation, without specific factual allegations or supporting evidence, is insufficient to prove misconduct by the requisite "clear and convincing" standard.
 

 [9]
 

 . Standard 4.41 provides that disbarment is generally appropriate when (a) a lawyer abandons the practice and causes serious or potentially serious injury to a client; or (b) a lawyer knowingly fails to perform services for a client and causes serious or potentially serious injury to a client; or (c) a lawyer engages in a pattern of neglect with respect to client matters and causes serious or potentially serious injury to a client.